## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STORE CAPITAL ACQUISITIONS, LLC, a Delaware limited liability company, and STORE MASTER FUNDING XIII, LLC, a Delaware limited liability company,** | **CIVIL ACTION – BREACH OF CONTRACT** |
| **Plaintiffs,** | |
| **v.** | **No. _____** |
| **5171 CAMPBELLS LAND CO., INC., a Pennsylvania corporation, WILLIAM KANE, FRANK KANE, and RON LINABURG,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiffs, STORE Capital Acquisitions, LLC and STORE Master Funding XIII, LLC ("Plaintiffs") for their complaint of breach of contract and breach of guaranty against Defendants, 5171 Campbells Land Co., Inc., a Pennsylvania corporation, William Kane, Frank Kane, and Ron Linaburg ("Defendants"), aver as follows:

### PARTIES, JURISDICTION AND VENUE

1.     STORE Capital Acquisitions, LLC ("STORE Capital") is a Delaware limited liability company with its principal place of business in Scottsdale, Arizona, and an address of 8377 E. Hartford Dr., Suite 100, Scottsdale, Arizona 85255.

2.     STORE Capital Acquisitions, LLC consists of a single member: STORE Capital Corporation, a Maryland corporation with its principal place of business in Scottsdale, Arizona.

3.      STORE Master Funding XIII, LLC ("STORE Master") is a Delaware limited liability company with its principal place of business in Scottsdale, Arizona, and an address of 8377 E. Hartford Dr., Suite 100, Scottsdale, Arizona 85255.

4.      STORE Master Funding XIII, LLC consists of a single member: STORE Capital Acquisitions, LLC.   STORE Capital Acquisitions, LLC consists of a single member: STORE Capital Corporation, a Maryland corporation with its principal place of business in Scottsdale, Arizona.

5.      5171 Campbells Land Co., Inc. is a Pennsylvania corporation with its principal place of business in Allegheny County, Pennsylvania.

6.      On information and belief, William Kane is a resident of Pennsylvania.

7.      On information and belief, Frank Kane is a resident of Pennsylvania.

8.      On information and belief, Ron Linaburg is a resident of Pennsylvania.

9.      William Kane, Frank Kane, and Ron Linaburg are each a "Guarantor," and, collectively, the "Guarantors."

10.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000 and the action is between citizens of different states.

11.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because, on information and belief, all Defendants are residents of Pennsylvania and at least one Defendant resides in this judicial district.

12.      Jurisdiction and venue are proper in this judicial district because Defendants have expressly submitted to such jurisdiction and venue.

## GENERAL ALLEGATIONS

**A.     The Mortgage Loan Agreement and Promissory Note**

13.     On or about April 3, 2018, STORE Capital and 5171 executed a Mortgage Loan Agreement (the "Loan Agreement") whereby STORE Capital agreed to loan to 5171 an aggregate amount of $1,750,000.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit A.

14.     On or about April 3, 2018, in connection with the Loan Agreement, 5171 executed in favor of STORE Capital a Promissory Note (the "Note"), whereby 5171 pledged to pay to STORE Capital the principal sum of the loan plus interest on the unpaid principal amount. A true and correct copy of the Note is attached hereto as Exhibit B.

15.     STORE Capital made the loan to 5171 for the sole purpose of enabling 5171 to refinance existing debt.

16.     The Loan Agreement requires 5171 to repay the outstanding principal amount of the loan, together with interest thereon, in the manner and in accordance with the terms and conditions of the Note and other loan documents.

17.     The Note contains an Amortization Schedule which lists the payment due dates for principal payments and interest payments.

18.     The Note provides that interest on the unpaid principal amount of the Note accrues from the date of the Note's execution to the Maturity Date, April 15, 2019, at the rate of 8.5% per annum.

19.     The Note provides that all past-due principal and interest bear interest from the due date to the date of actual payment at the rate of 18% per annum.

20.     The Note further provides for a late charge equal to 5% of the amount of any past-due payment or installment.

21.     The Loan Agreement provides that the failure to pay any principal, interest or other monetary sum due under the Note when due is an "Event of Default."

22.     The Loan Agreement also provides that "an 'Event of Default' under any other Loan Document, the Leases, or a breach or default . . . under any of the Other Agreements"[1] is an Event of Default for purposes of the Loan Agreement.

23.     The Note provides that the failure to pay any principal, interest, or other monetary sum due under the Note when due is an Event of Default.

24.     The Note provides that "an 'Event of Default' or a breach or default . . . under any of the Loan Documents or Other Agreements,"[2] is an Event of Default for purposes of the Note.

25.     The aggregate amount of the loan was advanced to 5171 in cash or otherwise immediately available funds.

26.     On or about April 3, 2018, in connection with the execution of the Loan Agreement and Note, the Guarantors executed an Unconditional Guaranty of Payment and Performance for the benefit of STORE Capital, in which the "Guarantors unconditionally, absolutely, and irrevocably guarantee[d] and promise[d] to pay to [STORE Capital], or order, any and all amounts, including, without limitation, principal and interest, taxes, . . . late charges [and] default interest."  A true and correct copy of this Guaranty is attached hereto as Exhibit C.

---

[1] Capitalized terms in this paragraph not otherwise defined herein have the meanings provided in the Loan Agreement.

[2] Capitalized terms in this paragraph not otherwise defined herein have the meanings provided in the Loan Agreement.

B.       **The Master Lease**

27.     On or about February 12, 2018, STORE Master, as Lessor, and 5171, as Lessee, entered into the Master Lease Agreement (the "Master Lease") for certain real property located at:

- 7175 Engle Road, Middleburg Heights, Ohio 44130

- 4334 Buffalo Road, Erie, Pennsylvania 16510

- 1871 Oakland Avenue, Indiana, Pennsylvania 15701

- 2714 West Lake Road, Erie, Pennsylvania 16505

- 915 W. Main Street, Grove City, Pennsylvania 16127

- 78 Perkins Road, Clarion, Pennsylvania 16214

- 18276 Conneaut Lake Road, Meadville, Pennsylvania 16335

- 207 W. Plum Street, Edinboro, Pennsylvania 16412

- 1953 Niles-Cortland Road SE, Warren, Ohio 44484

- 4403 Peach Street, Erie, Pennsylvania 16509

- 31-35 Bolivar Drive, Bradford, Pennsylvania 16701

- 2728 West State Street, Olean, New York 14760

- 310 W. Columbus Avenue, Corry, Pennsylvania 16407

- 5550 Interstate Blvd., Austintown, Ohio 44515

- 804 Boardman-Poland Road, Youngstown, Ohio 44512

- 219 E. Central Avenue, Titusville, Pennsylvania 16354

- 658 US Route 250 E, Ashland, Ohio, 44805

Collectively, the foregoing properties are referred to as the "Master Lease Properties."  A true and correct copy of the Master Lease is attached hereto as Exhibit D.

28.     5171 operates Perkins Restaurant and Bakery franchises on the Master Lease Properties.

29.     Section 6.01 of the Master Lease requires 5171 to pay, prior to the earlier of delinquency or the accrual of interest on the unpaid balance, all taxes and assessments of every type or nature assessed against or imposed upon the Master Lease Properties.

30.     Section 12.01(c) of the Master Lease provides that the failure "to pay, prior to delinquency, any taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against any of the Properties" is an Event of Default.

31.     Section 12.01(k) of the Master Lease contains a "cross-default provision," which provides that "if there is an 'Event of Default' or other breach or default by Lessee or any Guarantor under any of the other Transaction Documents or any Other Agreement,"[3] such Event of Default constitutes an Event of Default under the Master Lease.

32.     Section 12.02 of the Master Lease states STORE Master's remedies upon an Event of Default, such as the failure to pay rental obligations, taxes, or other Monetary Obligations required by the Master Lease, as follows:

> **Section 12.02 Remedies.**
> Lessor shall be entitled to exercise, at its option, concurrently, successively, or in any combination, all remedies available at Law or in equity, including, without limitation, any one or more of the following:
> . . .
> > C.     to bring an action against Lessee for any damages sustained by Lessor or any equitable relief available to Lessor and to the extent not prohibited by applicable Law, to seize all personal property or fixtures upon the Properties which Lessee owns or in which it has an interest, in which Lessor shall have a landlord's lien and/or security interest, and to dispose thereof in accordance with the Laws prevailing at the time and place of such seizure or

---

[3] Capitalized terms in this paragraph not otherwise defined herein have the meanings provided in the Master Lease.

to remove all or any portion of such property and cause the same to be stored in a public warehouse or elsewhere at Lessee's sole expense, without becoming liable for any loss or damage resulting therefrom and without resorting to legal or judicial process, procedure or action;

. . .

E.     except to the extent prohibited by applicable law to accelerate and recover from Lessee all Rental and Monetary Obligations due and owing and scheduled to become due and owing under this Lease both before and after the date of such breach for the entire original scheduled Lease Term;

F.     to recover from Lessee all Costs paid or incurred by Lessor as a result of such breach, regardless of whether or not legal proceedings are actually commenced;

. . .

I.     to use the Credit Enhancement as described in Section 4.09 hereof;

J.     Without limiting the generality of the foregoing or limiting in any way the rights of Lessor under this Lease or otherwise under applicable Laws, at any time after the occurrence, and during the continuance, of an Event of Default, Lessor **shall** be entitled to apply for and have a **receiver appointed** under applicable Law by a court of competent jurisdiction (by ex parte motion for appointment without notice) in any action taken by Lessor to enforce its rights and remedies hereunder in order to protect and preserve Lessor's interest under this Lease or in the Properties and the Personalty, and in connection therewith, **LESSEE HEREBY IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER** AFTER THE OCCURRENCE, AND DURING THE CONTINUANCE, OF AN EVENT OF DEFAULT. (emphasis added).

33.     In connection with the execution of the Master Lease, pursuant to the Credit Enhancement provision, 5171 delivered to STORE Master a Letter of Credit in an amount equal to $2,500,000 as security for the full and faithful performance by 5171 of the payment of the Base Monthly Rental.  *See* Exhibit D § 4.09(a)(i).

34.     In connection with the execution of the Master Lease, pursuant to the Credit Enhancement provision, 5171 delivered to STORE Master a Security Deposit in the sum

of $2,500,000 as security for the full and faithful performance by 5171 of the payment of each and every term of the Master Lease.  *See* Exhibit D § 4.09(a)(ii).

35.     The Master Lease provides that if 5171 "defaults in any respect of any of the terms, provisions, covenants and conditions of this Lease, . . . [STORE Master] may . . . use, apply or retain the whole or any part of the Security Deposit or draw on the Letter of Credit . . . for the payment of any Monetary Obligation (including Rental) in default or for any other sum which [STORE Master] may expend or be required to expend by reason of [5171]'s default." Exhibit D § 4.09(b).

36.     On or about February 12, 2018, in connection with the execution of the Master Lease, Guarantors executed an Unconditional Guaranty of Payment and Performance for the benefit of STORE Capital, in which "[e]ach Guarantor unconditionally, absolutely, and irrevocably guarantee[d] the punctual and complete payment and performance when due to Lessor of all Monetary Obligations, including, without limitation, Rental [and] taxes."  A true and correct copy of this Guaranty is attached hereto as Exhibit E.

C.     **The Individual Leases**

37.     In addition to the Master Lease, on or about February 12, 2018, 5171 and STORE Capital entered into separate lease agreements (the "Individual Leases") for certain real property located at:

- 587 E. Main Street, Canfield, Ohio 44406

- 1601 W. Prospect Road, Ashtabula, Ohio 44004

- 4896 Everhard Road NW, Canton, Ohio 44718

- 2945 East State Street, Hermitage, Pennsylvania 16148

- 115 Ludlow Street, Warren, Pennsylvania 16365

Collectively, the foregoing properties are referred to as the "Individual Lease Properties," and, together with the Master Lease Properties, the Individual Lease Properties are referred to as the "Properties." True and correct copies of the Individual Leases are attached hereto as Exhibits F, G, H, I, and J.

38.     5171 operates Perkins Restaurant and Bakery franchises on the Individual Lease Properties.

39.     The contractual terms of the Individual Leases are substantially identical to the terms of the Master Lease, including the remedy and default provisions, except that the Individual Leases do not have a Credit Enhancement provision and are not secured by a Letter of Credit or Security Deposit.

40.     As in the Master Lease, each Individual Lease contains a cross default provision, which provides that "if there is an 'Event of Default' or other breach or default by Lessee or any Guarantor under any of the other Transaction Documents or any Other Agreement,"[4] such Event of Default constitutes an Event of Default under the Individual Lease.

41.     On or about February 12, 2018, in connection with the execution of each Individual Lease, Guarantors executed an Unconditional Guaranty of Payment and Performance for the benefit of STORE Capital, in which "[e]ach Guarantor unconditionally, absolutely and irrevocably guarantee[d] the punctual and complete payment and performance when due to Lessor of all Monetary Obligations, including, without limitation, Rental [and] taxes." True and correct copies of the Guarantees are attached hereto as Exhibits K, L, M, N, and O.

---

[4] Capitalized terms in this paragraph not otherwise defined herein have the meanings provided in the Individual Leases.

D.      **5171 Campbells Land Co., Inc.'s Default**

42.     5171 has failed to make the required monthly payments under the Loan Agreement and Note.

43.     5171 has failed to pay taxes as required by the Leases.

44.     On May 3, 2019, counsel for Plaintiffs sent Defendants a Notice of Default and Demand for Payment ("Notice of Default"), explaining that 5171 failed to make required payments under the Loan Agreement and Note and failed to pay taxes as required by the Lease Agreements.  A true and correct copy of the Notice of Default is attached hereto as Exhibit P.

45.     Notwithstanding the Notice of Default, 5171 failed to cure the ongoing Events of Default.

46.     On May 22, 2019, counsel for Plaintiffs again sent Defendants a Notice of Continuing Default and Renewed Demand for Payment ("Notice of Continuing Default"), explaining that the Events of Default were ongoing and remained uncured.  A true and correct copy of the Notice of Continuing Default is attached hereto as Exhibit Q.

47.     As of the date of the filing of this Complaint, the Events of Default under the Loan Agreement, Note, Master Lease, and Individual Leases remain uncured.

48.     5171 has failed to pay STORE Capital the past due amount under the Loan Agreement.  Such outstanding amount is further subject to ongoing interest at the Default Rate of 18%.

49.     5171 has failed to pay outstanding taxes on multiple Properties.

## COUNT ONE – BREACH OF CONTRACT – LOAN AGREEMENT AND NOTE
### (5171 CAMPBELLS LAND CO., INC.)

50.     Plaintiffs incorporate by reference paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51.     5171 failed to pay STORE Capital amounts due and owed under the Loan Agreement and Note.

52.     The failure to pay amounts due and owed under the Loan Agreement and Note constitutes a default of those agreements.

53.     5171 was notified of its failure to pay amounts due and owed under the Loan Agreement and Note.

54.     5171 failed to cure its default after being notified.

55.     Based on the failure to pay amounts due and owed and the failure to cure, 5171 has defaulted on its obligations under the Loan Agreement and Note and has materially breached those agreements.

56.     Based on the cross default provisions and Events of Default under the Individual Leases and Master Lease, and the failure to cure those Events of Default, 5171 has further defaulted on and breached the Loan Agreement and Note.

57.     5171 owes unpaid principal, interest, and late charges to STORE Capital. The exact amount owed to STORE Capital under the Loan Agreement and Note will be proved at trial.

58.     Pursuant to the Loan Agreement and Note, Plaintiffs are entitled to an award of attorneys' fees, costs, and expenses incurred by Plaintiffs in this action.

## COUNT TWO – BREACH OF CONTRACT – MASTER LEASE AGREEMENT
## (5171 CAMPBELLS LAND CO., INC.)

59.     Plaintiffs incorporate by reference paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60.     Following the execution of the Master Lease, 5171 has been in possession of the Master Lease Properties.

61.     Except as excused by law or the conduct of 5171, Plaintiffs have performed all promises, conditions and covenants required on their part to be performed in accordance with the terms and conditions of the Master Lease.

62.     Under the terms of the Master Lease, 5171 agreed to pay all taxes required by the Master Lease prior to the earlier of delinquency or the accrual of interest on the unpaid balance.

63.     5171 has failed to pay taxes on the Master Lease Properties when due.

64.     The failure to pay, prior to delinquency, any taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against any of the Master Lease Properties constitutes default of the Master Lease.

65.     Plaintiffs notified 5171 of its failure to pay taxes due on the Master Lease Properties.

66.     5171 failed to cure its default by paying taxes owed on the Master Lease Properties prior to delinquency.

67.     Based on the failure to pay taxes due and owed and failure to cure, 5171 has defaulted on its obligations under the Master Lease has materially breached that agreement.

68. Based on the cross default provisions and Events of Default under the Loan Agreement, Note, and Individual Leases, and the failure to cure those Events of Default, 5171 has further defaulted on and breached the Master Lease.

69. The total amount of taxes and other Monetary Obligations past due will be proved at trial.

70. Pursuant to the Master Lease, Plaintiffs are entitled to an award of attorneys' fees, costs, and expenses incurred by Plaintiffs in this action.

## COUNT THREE – BREACH OF CONTRACT – INDIVIDUAL LEASE AGREEMENTS (5171 CAMPBELLS LAND CO., INC.)

71. Plaintiffs incorporate by reference paragraphs 1 through 70 of this Complaint as though fully set forth herein.

72. Following the execution of the Individual Leases, 5171 has been in possession of the Individual Lease Properties.

73. Except as excused by law or the conduct of 5171, Plaintiffs have performed all promises, conditions and covenants required on their part to be performed in accordance with the terms and conditions of the Individual Leases.

74. Under the terms of the Individual Leases, 5171 agreed to pay all taxes required by the Individual Leases prior to the earlier of delinquency or the accrual of interest on the unpaid balance.

75. 5171 has failed to pay taxes on the Individual Lease Properties when due.

76. The failure to pay, prior to delinquency, any taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against any of the Individual Lease Properties constitutes default of the Individual Leases.

77.     Plaintiffs notified 5171 of its failure to pay taxes due on the Individual Lease Properties.

78.     5171 failed to cure its default by paying taxes owed on the Individual Lease Properties prior to delinquency.

79.     Based on the failure to pay taxes due and owed and failure to cure, 5171 has defaulted on its obligations under the Individual Leases and has materially breached those agreements.

80.     Based on the cross default provisions and Events of Default under the Loan Agreement, Note, and Master Lease, and the failure to cure those Events of Default, 5171 has further defaulted on and breached the Individual Leases.

81.     The total amount of taxes and other Monetary Obligations past due will be proved at trial.

82.     Pursuant to the Individual Leases, Plaintiffs are entitled to an award of attorneys' fees, costs, and expenses incurred by Plaintiffs in this action.

## COUNT FOUR – BREACH OF CONTRACT – GUARANTEES (GUARANTORS)

83.     Plaintiffs incorporate by reference paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84.     Concurrent with the execution of the Loan Agreement and Note, the Master Lease, and the Individual Leases, and as inducement for Plaintiffs to enter into those agreements, the Guarantors executed multiple Unconditional Guarantees of Payment and Performance, pursuant to which they guaranteed the full, faithful, and timely payment and performance by 5171 under the Loan Agreement and Note, the Master Lease, and the Individual Leases.

85.     Each Guaranty remains and continues in full force and effect and has not been discharged in whole or in part.

86.     The Guarantors have been provided with due notice of breach or nonperformance by 5171.

87.     Pursuant to each Guaranty, Guarantors are liable to Plaintiffs for the damages caused by 5171's breach, as alleged above.

88.     The obligations of the Guarantors under the Guarantees are primary, joint, several, and independent of the obligations of 5171.

89.     Guarantors breached their obligations under each Guaranty by failing to pay Plaintiffs any sum of money due and owing by 5171 under the Loan Agreement and Note, the Master Lease, and the Individual Leases.

90.     As a proximate result of Guarantors' breaches of each Guaranty, Plaintiffs have been damaged as alleged above.

91.     Plaintiffs have been compelled to retain counsel to commence this litigation to recover damages for breaches of the Loan Agreement and Note, the Master Lease, the Individual Leases, and each Guaranty.

92.     Pursuant to the Loan Agreement, Note, Master Lease, Individual Leases, and each Guaranty, Plaintiffs are entitled to an award of attorneys' fees, costs, and expenses incurred by Plaintiffs in this action.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against all Defendants, jointly and severally, as follows:

1.      For compensatory damages of an amount to be proved at trial for unpaid principal, interest, and late charges under the Loan Agreement and Note, together

with accrued and accruing interest (at the contractual default rate), fees, charges and costs recoverable;

2.    For compensatory damages of an amount to be proved at trial for any outstanding Monetary Obligations under the Leases, together with accrued and accruing interest (at the contractual default rate), fees, charges and costs recoverable;

3.    To the extent Plaintiffs elect to terminate the Leases, Rental for the balance of the term of the Leases after the time of award, less any rents collected by Plaintiffs in mitigation of damages;

4.    For reasonable attorneys' fees and costs of suit;

5.    For interest at the maximum legal rate on all amounts due and owing;

6.    For the immediate appointment of a receiver over 5171 Campbells Land Co., Inc; and

7.    For such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  June 12, 2019

/s/ Jenny N. Perkins
Jenny N. Perkins, PA ID No. 306498
Craig Solomon Ganz, pro hac vice pending
Clifford Sacalis, PA ID No. 313765
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
perkinsj@ballardspahr.com
ganzc@ballardspahr.com
sacaliss@ballardspahr.com

OF COUNSEL:

Michael DiGiacomo
Ian Bucon

Ballard Spahr, LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
digiacomom@ballardspahr.com
buconi@ballardspahr.com

*Attorneys for Plaintiffs*