## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **STORE CAPITAL ACQUISITIONS, LLC, a Delaware limited liability company, and STORE MASTER FUNDING XIII, LLC, a Delaware limited liability company,** | : : : : : : : | **CIVIL ACTION** |
|  | : | **No. 19-CV-685** |
| **Plaintiffs,** | : : |  |
| **v.** | : : |  |
| **5171 CAMPBELLS LAND CO., INC. a Pennsylvania corporation, WILLIAM KANE, FRANK KANE, and RON LINABURG,** | : : : : : |  |
| **Defendants.** | : : |  |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
### FOR EXPEDITED APPOINTMENT OF RECEIVER

Plaintiffs, STORE Capital Acquisitions, LLC ("STORE Capital") and STORE Master Funding XIII, LLC ("STORE Master") (together, "Lessor" or "Plaintiffs"), by their counsel, respectfully submit this memorandum in support of their motion for the expedited appointment of a receiver in this commercial leasehold breach of contract action (the "Receivership Motion").

### I.      INTRODUCTION

This Receivership Motion is related to certain rights and remedies delineated in a Master Lease Agreement covering 17 commercial properties in Pennsylvania, Ohio, and New York, and 5 separate Individual Lease Agreements for properties located in Pennsylvania and Ohio. Defendants have failed to make payments due under the relevant Master Lease and Individual Leases such that Events of Default have occurred under all of the agreements between Lessor and 5171 Campbells Land Co., Inc. (the "Tenant" or "5171").  Tenant's breaches of the relevant

agreements have also triggered William Kane's, Frank Kane's, and Ron Linaburg's (together, the "Guarantors") liability under the relevant payment guarantees executed in conjunction with the relevant agreements between Tenant and Lessor.

Lessor is the owner of the leased premises covered by the Master Lease and Individual Lease Agreements.  Lessor seeks the appointment of an independent property receiver to preserve and protect the Leased Premises pending resolution of this lawsuit.  As demonstrated below, the appointment of a receiver is warranted by the express receivership provisions of the lease documents, Tenant's doubtful financial condition, and the exigent circumstances demonstrated here, where Tenant has failed to pay real estate taxes and various amounts due and owing to third parties, thus subjecting the leased premises to liens that will harm Lessor's property and property interests.  Further Tenant, as an operator of Perkins restaurant franchises in the leased premises, has failed to pay royalties to its franshisor resulting in litigation brought by the franchisor.

## II.     RELEVANT BACKGROUND

### A.     The Mortgage Loan Agreement and Promissory Note

On April 3, 2018, STORE Capital and 5171 executed a Mortgage Loan Agreement (the "Loan Agreement") whereby STORE Capital agreed to loan to 5171 an aggregate amount of $1,750,000.  A true and correct copy of the Loan Agreement is attached as Exhibit A to the Lessor's Complaint.  On April 3, 2018, in connection with the Loan Agreement, 5171 executed in favor of STORE Capital a Promissory Note (the "Note"), whereby 5171 pledged to pay to STORE Capital the principal sum of the loan plus interest on the unpaid principal amount.  A true and correct copy of the Note is attached as Exhibit B to the Lessor's Complaint.

STORE Capital made the loan to 5171 for the sole purpose of enabling 5171 to refinance existing debt.  Loan Agreement, § 1.  The Loan Agreement requires 5171 to repay the outstanding principal amount of the loan, together with interest thereon, in the manner and in accordance with

the terms and conditions of the Note and other loan documents. *Id.* The Note contains an Amortization Schedule which lists the payment due dates for principal payments and interest payments. *See* Note, Ex. B. The Loan Agreement provides that the failure to pay any principal, interest or other monetary sum due under the Note when due is an "Event of Default." Loan Agreement, § 10(b). The Loan Agreement also provides that an Event of Default under any other Loan Document, the Leases, or a breach or default under any of the Other Agreements, as defined in the Loan Agreement, is an Event of Default for purposes of the Loan Agreement. *Id.* at § 10(f). Similarly, failure to pay any principal, interest, or other monetary sum due under the Note is an Event of Default, and any Event of Default or a breach or default under any of the Loan Documents or Other Agreements, as defined in the Loan Agreement, is an Event of Default for purposes of the Note. Note, § 5.

B.     **The Master Lease**

On February 12, 2018, STORE Master, as lessor, and 5171, as lessee, entered into the Master Lease Agreement (the "Master Lease") for certain real property located at:

- 7175 Engle Road, Middleburg Heights, Ohio 44130

- 4334 Buffalo Road, Erie, Pennsylvania 16510

- 1871 Oakland Avenue, Indiana, Pennsylvania 15701

- 2714 West Lake Road, Erie, Pennsylvania 16505

- 915 W. Main Street, Grove City, Pennsylvania 16127

- 78 Perkins Road, Clarion, Pennsylvania 16214

- 18276 Conneaut Lake Road, Meadville, Pennsylvania 16335

- 207 W. Plum Street, Edinboro, Pennsylvania 16412

- 1953 Niles-Cortland Road SE, Warren, Ohio 44484

- 4403 Peach Street, Erie, Pennsylvania 16509

- 31-35 Bolivar Drive, Bradford, Pennsylvania 16701

- 2728 West State Street, Olean, New York 14760

- 310 W. Columbus Avenue, Corry, Pennsylvania 16407

- 5550 Interstate Blvd., Austintown, Ohio 44512

- 804 Boardman-Poland Road, Youngstown, Ohio 44512

- 219 E. Central Avenue, Titusville, Pennsylvania 16354

- 658 US Route 250 E, Ashland, Ohio, 44805

Collectively, the foregoing properties are referred to as the "Master Lease Properties." A true and correct copy of the Master Lease is attached as Exhibit D to Lessor's Complaint.

The Master Lease requires 5171 to pay Base Monthly Rental (as defined in the Master Lease) on or before the first day of each calendar month. Master Lease, § 4.01. The Master Lease also requires 5171 to pay Store STORE Master other sums and charges as Additional Rental (as defined in the Master Lease). *Id.* at § 4.03. Additionally, the Master Lease requires 5171 to pay, prior to the earlier of delinquency or the accrual of interest on the unpaid balance, all taxes and assessments of every type or nature assessed against or imposed upon the Master Lease Properties. *Id.* at § 6.01.

The Master Lease provides that the failure to pay, "prior to delinquency, any taxes, assessments or other charges the failure of which to pay will result in the imposition of a lien against any of the Properties," is an Event of Default. *Id. at* § 12.01(c). The Master Lease contains a cross-default provision, which further provides that "if there is an 'Event of Default' or other breach or default by Lessee or any Guarantor under any of the other Transaction Documents or any Other Agreement," such Event of Default constitutes an Event of Default under the Master Lease. *Id.* at § 12.01(k).

The remedies available to STORE Master under the Master Lease upon the occurrence of

an Event of Default under the Master Lease include STORE Master's right and entitlement to:

> apply for and have a **receiver appointed** under applicable Law by a court of competent jurisdiction (by ex parte motion for appointment without notice) in any action taken by Lessor to enforce its rights and remedies hereunder in order to protect and preserve Lessor's interest under this Lease or in the Properties and the Personalty, and in connection therewith . . . .

*Id.* at § 12.02(j) [emphasis added].  The Master Lease further provides that:

> **LESSEE HEREBY IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT** TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER AFTER THE OCCURRENCE, AND DURING THE CONTINUANCE, OF AN EVENT OF DEFAULT.

*Id.* (emphasis in original, with the addition of bold type).

### C.      The Individual Leases

In addition to the Master Lease, on February 12, 2018, 5171 and STORE Capital entered into separate lease agreements (the "Individual Leases") for certain real property located at:

- 587 E. Main Street, Canfield, Ohio 44406

- 1601 W. Prospect Road, Ashtabula, Ohio 44004

- 4896 Everhard Road NW, Canton, Ohio 44718

- 2945 East State Street, Hermitage, Pennsylvania 16148

- 115 Ludlow Street, Warren, Pennsylvania 16365

Collectively, the foregoing properties are referred to as the "Individual Lease Properties," and, together with the Master Lease Properties, the Individual Lease Properties are referred to as the "Properties."  True and correct copies of the Individual Leases are attached as Exhibits F, G, H, I, and J to Lessor's Complaint.

The contractual terms of the Individual Leases are substantially identical to the terms of the Master Lease.  As in the Master Lease, each Individual Lease contains a "Cross Default

Provision," which provides that "if there is an 'Event of Default' or other breach or default by Lessee or any Guarantor under any of the other Transaction Documents or any Other Agreement," such Event of Default constitutes an Event of Default under the Individual Lease. *See* Individual Leases at § 12.01(k). Similarly, **each Individual Lease contains language identical to the Master Lease providing for the appointment of a receiver as a remedy upon the occurrence of an Event of Default.** *See id.* at § 12.02(i). Specifically, in each Individual Lease, 5171 irrevocably waived "**ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER AFTER THE OCCURRENCE, AND DURING THE CONTINUANCE, OF AN EVENT OF DEFAULT**." *Id.* (emphasis in original, with the addition of bold type).

      **D.**     **5171 Campbells Land Co., Inc.'s Continuing Monetary Defaults**

     As pleaded in the Complaint, 5171 has failed to meet its contractual monetary obligations under the Loan Agreement, Note, and Lease Agreements. 5171 failed to pay STORE Capital past-due principal and interest payments under the Loan Agreement and Note. *See* L. Hale Aff., ¶ 4. Such amounts are further subject to ongoing interest at the Default Rate of 18%. Failure to make payments due under the Loan Agreement constitutes an Event of Default under the Master Lease and the Individual Leases, as well as an Event of Default under the Loan Agreement. Furthermore, 5171 has failed to pay property taxes due on the Properties, as it is required to do under the Master Lease and the Individual Leases. *Id.* at ¶ 5. Failure to pay taxes due under the Master Lease and the Individual Leases is an Event of Default under the Master Lease, the Individual Leases, and the Loan Agreement.

     Given 5171's failure to pay taxes on the leased Properties and failure to stay current with payments due under the Loan Agreement and Note, on May 3, 2019, counsel for Plaintiffs sent Defendants a Notice of Default and Demand for Payment ("Notice of Default"), explaining that

5171 failed to make required payments under the Loan Agreement and Note and failed to pay taxes as required by the Lease Agreements. *See* Complaint, Exhibit P. Notwithstanding the Notice of Default, 5171 failed to cure the ongoing Events of Default. On May 20, 2019, counsel for Plaintiffs again sent Defendants a Notice of Continuing Default and Renewed Demand for Payment ("Notice of Ongoing Default"), explaining that the Events of Default were ongoing and remained uncured. *See* Complaint, Exhibit Q.

5171's failure to stay current with its financial obligations has placed Plaintiffs' properties in danger of being subjected to third-party liens. For example, 5171 owes a roofing contractor over $40,000 for roofing repairs made to a leased Property. 5171 is contractually liable for keeping all buildings on any leased Property in good repair and is responsible for any expenses incurred in that effort. On May 31, 2019, STORE Capital received a demand for payment from the roofing contractor, who threatened to place a mechanic's lien on the leased Property due to 5171's failure to pay for roofing services rendered. *See* Exhibit 5. STORE Capital subsequently notified 5171 that it must pay the roofing contractor immediately or else risk an additional Event of Default under the relevant Lease.

Despite Plaintiffs' repeated good-faith efforts to remind 5171 of its contractual obligations and notify it of actual and potential Events of Default, 5171 has failed to cure its ongoing defaults. As of the date of the filing of this Motion, the Events of Default under the Loan Agreement, Note, Master Lease, and Individual Leases remain uncured.

Although Lessor provided 5171 and the Guarantors with notice of the ongoing Events of Default, neither 5171 nor the Guarantors have made any effort to cure the existing Events of Default. Based on 5171's and the Guarantors' failure to cure the Events of Default, and their unstable financial condition, it does not appear that there is any hope of cure of the monetary

defaults so long as 5171 remains in control of the Properties.

**D.     5171 Campbells Land Co.'s Operational Issues**

Since filing the Complaint, it has come to STORE's attention that 5171 is in breach of its franchise agreements with its franchisor.  *See* Wood, Andrea, *Perkins Seeks TRO to Close 9 Area Restaurants*, https://businessjournaldaily.com/perkins-seeks-tro-to-close-9-area-franchise-restaurants/, July 2, 2019, attached hereto as **Exhibit 6**.  5171's franchisor, Perkins & Marie Calendar's, LLC ("PMC") filed a complaint against 5171 in the United States District Court for the Western District of Tennessee.  *See* Case No. 19-cv-02414-JPM-dkv (W.D. Tenn.).  PMC alleges in its complaint against 5171 that 5171 has defaulted on license agreements and owes PMC nearly $2.2 million in franchise fees.  PMC further alleges that 5171 purchased from non-approved vendors and sold unapproved products in its franchised restaurants.  *See* Ex. 7.  Though PMC has issued a de-identification letter and terminated 5171's license, 5171 has continued to operate Perkins Restaurants in the Properties.

**III.     ARGUMENT**

**A.     Federal Law Governs the Appointment of a Receiver for the Property.**

Rule 66 of the Federal Rules of Civil Procedure governs the appointment of a receiver in diversity jurisdiction cases.  Thus, federal courts apply federal common law in determining whether the appointment of a receiver in a foreclosure action is appropriate.  *See Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) ("The appointment of a receiver by a federal court exercising diversity jurisdiction is governed by federal law."); *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp.2d 604, 611 (D.N.J. 2012) (same).

The Court may also consider Pennsylvania law in deciding whether to appoint a receiver.  *See, e.g.*, *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 845 (9th Cir. 2009) (holding that "the district court has broad discretion in appointing a receiver"); 12 Charles Alan Wright et al.,

*Federal Practice and Procedure* § 2983 (2d. ed. 2013) (observing that "federal courts are likely to look to state law for guidance" in the absence of substantial federal precedent under Rule 66).

"No hearing is necessary where the facts support the appointment of a receiver." *MSCI 2006-IQ11 Logan Blvd. Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P.*, No. 4:16-CV-2090, 2017 WL 485958, at *1 (M.D. Pa. Feb. 6, 2017), citing *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991); *accord Iowa Square Realty LLC v. JSMN Shenango Valley Mall, LLC*, Civil Action No. 17-497, 2018 WL 814745 (W.D. Pa. Feb. 2, 2018) (granting contested motion to appoint receiver for mall without hearing). As demonstrated below, the facts manifestly support the immediate appointment of a receiver in this case.

**B.      The Lease Documents Grant Lessor The Right To A Receiver.**

Courts in this Circuit have recognized the importance of contractual provisions providing for the appointment of a receiver contrasting situations like the one presently at issue with "the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *CCC Atl.*, 905 F. Supp.2d at 615. *See also, Iowa Square*, 2018 WL 814745 at *3 ("The parties agreed to th[e receivership] provision in the relevant contract and the language of the contract is clear. Therefore this is not an extraordinary remedy."); *Greater Lewistown*, 2017 WL 485958, at *4 (appointing receiver over borrower's opposition where "[i]t is evident . . . that by the plain language of the mortgage contract, the parties have agreed to a receivership of the subject property").

Pennsylvania law is equally clear that a receiver may properly be appointed where, as here, "the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default." *Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 891 (Pa. Super. Ct. 1994); *accord City Nat'l Bank v. 728 Market Street*, No. 4490, 2012 Phila. Ct. Com. Pl. LEXIS 73, at *13 (Phila. Ct. Com. Pl. Feb. 21, 2012) (appointing receiver where loan documents contained

receivership provision because "[b]ased on the loan agreement, Defendant's default under the loan entitles [Plaintiff] to the appointment of a receiver"). As previously noted, the Master Lease and the Individual Leases provide that, following an Event of Default, Lessor may, "apply for and have a receiver appointed under applicable Law by a court of competent jurisdiction." Master Lease § 12.02(j); Individual Leases, § 12.02(i).

Through the Master Lease and the Individual Leases, 5171 explicitly agreed that it "IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER." Master Lease § 12.02(j); Individual Leases, § 12.02(i) (emphasis in originals). Accordingly, as in *CCC Atlantic*, *Iowa Square*, and *Greater Lewistown*, appointment of a receiver is appropriate here, where there is a contractual provision providing for such a remedy upon the occurrence of an event of default. The Court, as a matter of law, does not need to engage in an equitable analysis based on the clear and concise remedy for a receivership that the parties contractually bargained for. Based on these facts, and the relevant case law, Plaintiffs respectfully request that this Court appoint a receiver in the manner referenced below and in the relevant proposed order. A form of receivership order is filed herewith.

> **C.    Application Of The Relevant Factors Establishes The Propriety Of Appointing A Receiver In This Case.**

Although the Court has the power to grant the receivership by and through the express contractual terms of the parties. The Court also has the ability to appoint a receiver on equitable grounds. It has oft been observed "there is 'no precise formula for determining when a receiver may be appointed.'" *Canada Life*, 563 F.3d at 844, quoting *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). Rather, "federal courts consider a variety of factors in making this determination." *Canada Life*, 563 F.3d at 844 (listing seven factors)

(citations omitted); *see also Berk & Berk*, 767 F. Supp. at 597 (listing additional and/or alternative factors).   Though Lessor does not seek appointment of a receiver pending a foreclosure of mortgaged property, it does seek a receiver to collect profits and to operate and manage the Leased Properties pursuant to the terms of the Master Lease and the Individual Leases, and thus the factors considered in the mortgage foreclosure context are generally applicable here.   Where "the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property," the courts may "consider whether the evidence demonstrates 'something more' than just 'the doubtful financial standing' of the defendant and the 'inadequacy of the security." *CCC Atl.,* 905 F. Supp.2d at 614, quoting *Canada Life*, 563 F.3d at 845.   Here, Lessor seeks the appointment of a receiver over property it owns, rather than mortgaged property owned by a mortgagee.   Thus, the considerations typically analyzed in the mortgage foreclosure context weigh even more strongly in favor of the appointment of a receiver here.

For present purposes, as Judge Brann of the U.S. District Court for the Middle District of Pennsylvania recently observed in the mortgage foreclosure context, "the proper analysis is that employed [in *CCC Atlantic*] by the late Honorable Joseph E. Irenas, writing for the District of New Jersey."   *MSCI Greater Lewistown*, 2017 WL 485958, at *1; *accord Iowa Square*, 2018 WL 814745 at *2 (applying *CCC Atlantic* factors).   Judge Irenas recognized a number of potentially relevant considerations but based his decision to appoint a receiver to manage and operate the property at issue upon four factors in particular: (i) the underlying agreement's provision for the appointment of a receiver upon default; (ii) the borrower's doubtful financial standing; (iii) the amount of the debt's exceeding the value of the mortgaged property; and (iv) the borrower's diversion of income to pay fees to its affiliated management company.   *CCC Atlantic*, 905 F.

Supp.2d at 615-616.[1]

Separate and apart from the considerations cited by Judge Irenas, Pennsylvania law otherwise supports the appointment of a receiver for real property in cases of potential waste or mismanagement. *See*, *e.g.*, *Hankin v. Hankin*, 493 A.2d 675, 677 (Pa. 1985) (affirming trial court's discretion to appoint receiver where partners charged with selling partnership property engaged in waste); *Northampton National Bank v. Piscanio*, 379 A.2d 870, 872 (Pa. 1977) (citations omitted) (the appointment of a receiver is warranted where it is "necessary to save the property from injury or threatened loss or dissipation"); *Tate v. Philadelphia Transp. Co.*, 190 A.2d 316, 321 (Pa. 1963) (noting that "a receiver may be appointed by the Court where there has been such gross mismanagement or fraud or similar circumstances that a receiver is clearly required").  Applying all of the foregoing factors to the present case establishes the propriety of appointing a receiver for the Leasehold.

### 1.      The Lease Documents Provide for A Receiver in an Event of Default.

As previously noted, the Master Lease and the Individual Leases provide that, following an Event of Default, Lessor may, "apply for and have a receiver appointed under applicable Law by a court of competent jurisdiction."   Master Lease § 12.02(j); Individual Leases, § 12.02(i).  Through the Master Lease and the Individual Leases, 5171 explicitly agreed that it "IRREVOCABLY CONSENTS TO AND WAIVES ANY RIGHT TO OBJECT TO OR OTHERWISE CONTEST THE APPOINTMENT OF A RECEIVER."  Master Lease §§ 12.02(j); Individual Leases, § 12.02(i) (emphasis in originals).

The terms of the Master Lease and Individual Leases alone are sufficient for this Court to

---

[1]      The Court also cited one additional factor, but that was essentially a rejection of an equitable argument raised by the borrower with respect to the lender's acceptance and application of mortgage payments.  *CCC Atlantic*, 905 F. Supp.2d at 616-17.

appoint a receiver over the Properties in this context.  *See, e.g.*, *Liberty Ctr. Venture*, 437 Pa. Super. 544 at 551.  Unlike the mortgage foreclosure context where the appointment of a receiver disrupts the ownership rights of a mortgagee of property, here, Lessor seeks an independent receiver to manage property that Lessor itself owns.  The typical concern regarding the disruption of a defendant's property rights are not present here.  *Cf. Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 824-35 (3d Cir. 1959) (describing appointment of a receiver as "an equitable remedy of rather drastic nature" and noting that appointment of a receiver is limited to movants "who have a real interest in the property held by a defendant").

Should the Court base its decision to appoint a receiver on the analysis of the *CCC Atlantic* factors, for the same reasons cited above, this factor is met.

### 2.      5171's Financial Standing Is Doubtful.

It is equally apparent that 5171 is of doubtful financial standing and STORE has received limited and somewhat cryptic information as to the true depths of 5171's financial despair.[2]  Yet, at a minimum, 5171 has several tax liabilities that remain outstanding.  As it relates to these taxes, 5171 allowed the taxes to become delinquent.  It was only when STORE threatened to seek judicial intervention that 5171 promised to pay these delinquent amounts.  However, as further evidence

---

[2] 5171, after being in default of the financial reporting requirements under the various leases, begrudgingly provided certain financial statements to STORE.  These statements paint a bleak picture of a floundering company mired in debt and out of control expenses.  A true and correct copy of the financial statements provided by 5171 are attached hereto as **Exhibit 2**.  STORE is also aware that one of the guarantors has obtained an independent forensic review by an expert and that expert's conclusion evidences a company riddled with accounting irregularities, potential fraud, and mounting losses.  A true and correct copy of the forensic review is attached hereto as **Exhibit 3**.  Shortly before filing this Motion, STORE also received a demand letter from a commercial roofing company seeking payment of more than $46,000, and threatening to record a lien on one of the Properties, in connection with amounts 5171 owes to the contractor related to roof replacement.  A true and correct copy of the demand letter is attached hereto as **Exhibit 4**.

of its doubtful financial position, 5171 wrote several checks that subsequently bounced, leaving STORE in a precarious position with the taxing authorities given their right to lien and foreclose on these Properties – to the detriment of STORE as the landowner.  These defaults under the Master Lease and the Individual Leases raise serious concerns with 5171's financial condition as well as the ability of the Guarantors to ensure payment of 5171's obligations.  *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*, No. 09-14703, 2010 WL 374033 (E.D. Mich. Jan. 25, 2010) (appointing a receiver because borrower's "failure[] . . . to pay its monthly installments under the Note demonstrate that [borrower] itself is in a poor financial condition.").

Even more immediate evidence of 5171's dubious financial standing comes in the form of the lawsuit initiated by 5171's franchisor.  As alleged in the franchisor's complaint, 5171 defaulted on its license agreements and owes its franchisor nearly $2.2 million in franchise fees.  *See* Ex. 7. The franchisor further alleges that 5171 purchased from non-approved vendors and sold unapproved products in its franchised restaurants.  *Id.*  These operation failings have resulted in the franchisor seeking a temporary restraining order to close the restaurants operating in certain of the Properties.  *See* Case No. 19-cv-02414-JPM-dkv (W.D. Tenn.).  The lack of operating businesses in any of the Properties places STORE at considerable financial risk and all but requires that a receiver be appointed to stop the bleeding.

### 3.     The Value Of The Leasehold is at Risk.

This factor is less applicable than the others set forth in *CCC Atlantic* as 5171 has not granted Lessor a mortgage on the Properties; rather, Lessor owns the Properties.  Nonetheless, Lessor faces an imminent risk of liens being placed and a foreclosure action being initiated, as a result of 5171's failure to pay property taxes when due.  Further, based on the limited financial statements provided by 5171, and a forensic expert for one of the guarantors it is clear that the debts owed are excessive in nature.  Courts addressing this factor in the mortgage foreclosure

context have found in favor of the appointment of a receiver where the discrepancy between the amount of the debt materially exceeds the value of the mortgaged property and where the discrepancy can be expected to increase. *See, e.g.*, *CCC Atl.*, 905 F. Supp.2d at 616; *accord Inv'rs. Warranty of Am., Inc. v. B.W.E. Dev., L.L.C.*, No. 09-4490, 2010 WL 2557559, at *5 (D.N.J. June 23, 2010) (appointing a receiver where "the property is inadequate security for the Note and [Borrower's] debts to [Lender] will continue to balloon unless a rent receiver is appointed to take control of the property"). Here, nonpayment of property taxes will cause a continued increase in the amount owed on such taxes, as well as the threat of potential liens on the Properties. Further, the closure of the businesses operating in the Properties will reduce property value and subject STORE to significant potential losses. This factor, considered in the context of a lease rather than a mortgage, weighs in favor of the appointment of a receiver.[3]

### 4. The Appointment Of A Receiver Is Otherwise Warranted On Equitable Grounds.

In addition to the foregoing considerations, the need for a receiver to preserve and protect the Properties is imperative in this case. As noted, 5171's failure to pay taxes on the Properties has jeopardized Lessor's ownership interest by exposing the Properties to the risk of tax liens. Further, 5171, has failed to pay various contractors at the property. *See, e.g.*, Exhibit 4. These contractors are now seeking payment from STORE, and threatening to file mechanics liens on the Properties if payment is not made. *See*, *e.g*., *Northampton Nat'l Bank v. Piscanio*, 379 A.2d 870, 872 (Pa. 1977) (citations omitted) (the appointment of a receiver is warranted where it is "necessary to save the property from injury or threatened loss or dissipation"). And, again, the current lawsuit against 5171 by its franchisor has the potential for significant collateral financial

---

[3]     STORE is not aware whether 5171 is employing and paying management fees to an affiliated property manager.

damage to STORE.

## IV.    PROPOSED RECEIVER

Lender respectfully proposes that the Court appoint Giuliano Miller & Company, LLC ("Giuliano Miller"), as the receiver for the Properties.  Giuliano Miller's qualifications to serve as receiver are outlined in the Curriculum Vitae attached as **Exhibit 5** hereto.  As set forth in the Curriculum Vitae, Giuliano Miller has experience as a receiver and liquidating trustee for in this region, and is well qualified to serve as Receiver.

## V.    CONCLUSION

The application of the relevant federal and Pennsylvania factors that the Court may consider in determining whether to appoint a receiver weighs heavily in favor of granting Lessor's motion.  As demonstrated above, the Master Lease and the Individual Leases expressly provide for the appointment of a receiver in the present circumstances, and the balance of the equities decisively favors Lessor.  The appointment of a receiver here is an appropriate and narrowly tailored remedy that is necessary to preserve and protect the Properties against further waste or dissipation during the pendency of these proceedings.

Respectfully submitted,


Dated:  July 2, 2019

/s/ Clifford Sacalis
Craig Solomon Ganz, admitted *pro hac vice*
Clifford Sacalis, admitted *pro hac vice*
Michael A. DiGiacomo, admitted *pro hac vice*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999
ganzc@ballardspahr.com
sacaliss@ballardspahr.com
digiacomom@ballardspahr.com

Attorneys for Plaintiff